-1-

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **7-ELEVEN, INC.** § § | |
| **Plaintiff,** § § | |
| v. § § | **Case No.: 24-cv-4741** |
| § | |
| **REDBOX AUTOMATED RETAIL, LLC** § § | |
| **Defendant.** § § § | |

## 7-ELEVEN, INC.'S ORIGINAL COMPLAINT

Plaintiff 7-Eleven, Inc. ("7-Eleven") files this Original Complaint against Defendant Redbox Automated Retail, LLC ("Redbox" or "Defendant") and shows as follows:

### I.   INTRODUCTION

1. This complaint seeks specific performance by RedBox and recovery of commissions pursuant to a contract between the parties. 7-Eleven is a convenience store chain with locations throughout the United States and Canada. Redbox owns and operates video rental automated kiosks at 7-Eleven's convenience stores pursuant to a written agreement and revenue-sharing arrangement with 7-Eleven. Despite 7-Eleven's termination of the parties' written agreement due to RedBox's failure to honor its contractual payment obligations, RedBox persists in operating its kiosks on 7-Eleven property without permission and for RedBox's sole financial benefit. 7-Eleven brings this action to (1) recover commissions owed to it by RedBox per the terms of the parties' written agreement, and (2) seek specific performance by RedBox to remove Redbox equipment and property from 7-Eleven's store locations.

-1-

## II. PARTIES

2. 7-Eleven, Inc. is a Texas corporation with its principal place of business in Dallas County, Texas.

3. Redbox Automated Retail, LLC is a Delaware limited liability company with its principal place of business at 132 East Putnam Ave, 2nd Floor, Cos Cob, CT 06807, and can be served through its registered agent, Cogency Global, Inc., 600 South Second Street, Suite 404, Springfield, Illinois 62704-2542. Redbox Automated Retail, LLC is a subsidiary of Chicken Soup for the Soul Entertainment, Inc.

4. The sole member of Redbox is Redwood Intermediate, LLC, a Delaware Limited Liability Company with a principal place of business at 1 Tower Lane, Suite 800, Oakbrook Terrace, Illinois 60181.

5. The sole member of Redwood Intermediate, LLC is RB Second Merger Sub LLC, a Delaware Limited Liability Company with its principal place of business at 132 E. Putnam Avenue, Cos Cob, Connecticut 06807.

6. The sole member of RB Second Merger Sub LLC is Chicken Soup for the Soul Entertainment, Inc., a Delaware Corporation with its principal place of business at 132 E. Putnam Avenue, Cos Cob, Connecticut 06807.

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a), which grants district courts original jurisdiction over civil actions where diversity exists between two parties with a controversy exceeding $75,000 in value.

8. Under 28 U.S.C. § 1332(b), 7-Eleven is deemed to be a citizen of Texas for the purpose of jurisdiction because it is a Texas corporation with its principal place of business in Texas.

9. For the purpose of diversity jurisdiction, "the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

10. As described in Paragraphs 3-6, *supra*, Redbox is a citizen of Connecticut and Delaware, based on the citizenship of its members. Thus, 7-Eleven and Redbox are diverse in citizenship.

11. The amount in controversy exceeds $75,000, as set forth in greater detail herein.

12. Under 28 U.S.C. § 1391, venue is proper in this Court because the agreement between Plaintiff and Defendant provides for jurisdiction in DuPage County, Illinois, which is a county encompassed by the United States District Court for the Northern District of Illinois.

### IV. FACTUAL BACKGROUND

13. 7-Eleven is a retail convenience store operator and franchisor headquartered in Irving, Texas.

14. RedBox is a video rental company that offers DVD, Blu-ray, 4K and video game rentals through branded automated Redbox kiosks (the "Kiosks") placed by Redbox at or near retail locations owned by third parties.

**The Parties' Agreement**

15. On or about January 1, 2015, the parties entered into a Kiosk Operating Agreement (the "Agreement"), whereby 7-Eleven agreed to permit RedBox to place its automated Kiosks outside numerous 7-Eleven stores in certain agreed locations nationwide in exchange for RedBox's payment of contractual commissions to 7-Eleven. A true and accurate copy of the Agreement, together with amendments executed by the parties and effective as of January 2019 and January 2022, is attached hereto as "**Exhibit 1**." The parties agreed that Texas law would govern their Agreement and their relationship. Ex. 1, ¶ 14.2.

16. RedBox makes abundantly clear in its agreements that it owns all right, title and interest in the Redbox Kiosks and all the media contained therein. Ex. 1 at ¶ 2.3. 7-Eleven has no right of access to the Redbox Kiosks located at 7-Eleven stores. Ex. 1 at ¶ 5.1. RedBox states in the Agreement that "it is critical that only Redbox – and not [7-Eleven] – physically moves a Kiosk", due to the sensitive nature of such equipment and the trained personnel required to handle it. Ex. 1 at ¶ 6.

17. RedBox promised that in the event of termination of the Agreement, it would (a) remove the Redbox Kiosks at its sole cost and expense, (b) surrender possession of the premises occupied by the Kiosks, (c) return such premises to good clean condition, and (d) consult with 7-Eleven to agree upon a reasonable schedule for RedBox to accomplish such removal within thirty (30) days after termination. RedBox also promised to continue paying commission revenue to 7-Eleven until the time that the Kiosks were removed. Ex. 1 at ¶ 6.7.

**RedBox Breaches Its Contractual Obligation To Pay Commissions**

18. On June 26, 2023, 7-Eleven sent written demand to RedBox to pay all commissions due and owing to 7-Eleven for all amounts past due as of March 2023. A true and accurate copy of the Demand Letter is attached hereto as "**Exhibit 2.**" RedBox failed to pay the commissions as demanded. Following 7-Eleven's written demand and RedBox's refusal to honor its contractual payment obligations, 7-Eleven terminated the Agreement in August 2023 ("Termination Letter"). A true and accurate copy of the Termination Letter is attached hereto as "**Exhibit 3.**"

19. As of November 2023, RedBox owes 7-Eleven approximately $270,000 with commissions continuing to accrue. RedBox has never disputed that it owes such monies to 7-Eleven.

-5-

**RedBox Refuses To Honor Its Contractual Obligation To Remove Redbox Kiosks**

20. As set forth above, upon termination, the Agreement lays out specific Kiosk removal procedures that only RedBox can perform. Despite this, and despite written demand by 7-Eleven, RedBox refused to make any effort to remove its Kiosks from 7-Eleven's properties.

21. Worse, RedBox continues to operate Redbox Kiosks at 7-Eleven locations after such termination, and presumably continues to collect revenue from such operations.

22. Therefore, 7-Eleven seeks specific performance by RedBox of its obligations under the Agreement, to take all steps necessary, at RedBox's sole cost and expense, to remove the Redbox Kiosks from 7-Eleven locations and perform RedBox's other post-termination obligations set forth in the parties' Agreement.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
**Breach of Contract**

23. 7-Eleven repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

24. 7-Eleven and RedBox entered into a valid and enforceable contract by way of the Agreement.

25. 7-Eleven has at all times performed and complied with its contractual obligations under the Agreement.

26. RedBox breached the Agreement by failing to pay commissions owed to 7-Eleven as required under the Agreement.

27. RedBox's material breaches of the Agreement have directly caused, and continue to cause, damages to 7-Eleven. As of the filing of this suit, 7-Eleven's damages exceed $270,000 in past-due commission payments, excluding attorney's fees and costs.

US2008 30009969 1

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### Breach of Contract and Specific Performance

28. 7-Eleven repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

29. 7-Eleven and RedBox entered into a valid and enforceable contract by way of the Agreement.

30. 7-Eleven has at all times performed and complied with its contractual obligations within the Agreement.

31. RedBox breached the Agreement by failing to comply with the Kiosk removal procedures that RedBox insisted upon within the Agreement, and by RedBox's continued refusal to remove the Kiosks from 7-Eleven's properties.

32. Redbox's failure to comply with its obligations to remove the Kiosks pursuant to the Agreement would cost substantially more than $1 million for 7-Eleven to handle the on-site Kiosk removal and associated repair work.

33. The Agreement specifically states it is "critical" that only RedBox remove the Kiosks because the Kiosks contain sensitive electronic equipment and machinery, needs to remain powered to monitor inventory and status, and require specialized equipment for handling. Ex. 1 ¶ 6.1.

34. Additionally, the Kiosks hardware and software may contain sensitive personal and financial information of RedBox customers, which 7-Eleven has no right to access under the Agreement and which could create unnecessary risk for 7-Eleven to access.

35. RedBox's material breaches of the Agreement have directly caused, and continue to cause, injury to 7-Eleven. 7-Eleven seeks specific performance by RedBox to comply with the Kiosk removal procedures set forth in the parties' Agreement, specifically the requirement that RedBox

complete the physical removal of the Kiosks from 7-Eleven's premises at RedBox's sole cost and expense.

WHEREFORE, Plaintiff 7-Eleven, Inc. respectfully requests upon final trial hereof, final judgment be entered in favor of Plaintiff and against RedBox Redbox Automated Retail, LLC on all Plaintiff's claims, and awarding 7-Eleven the following relief:

(a) Awarding compensation to 7-Eleven in an amount to be proven at trial for Commissions due and owing since March 2023 until the Kiosks are removed or disposal of the Kiosks is authorized;

(b) Awarding money damages in favor of 7-Eleven, and against Redbox, for all losses and damages suffered as a result of the acts complained of herein, in an amount to be proven at trial;

(c) Specific performance in the form of an order directing that RedBox comply with the Kiosk removal procedures set forth in the parties' Agreement, and specifically the requirement that RedBox complete the physical removal of the Kiosks from 7-Eleven's premises at RedBox's sole cost and expense;

(d) 7-Eleven's reasonable attorneys' fees, expenses and costs of court;

(e) pre-judgment and post-judgment interest at the maximum rates allowed by law; and

(f) any other relief to which 7-Eleven may be justly entitled at law or in equity, including, but not limited to reserving the right to seek a preliminary injunction and/or a temporary restraining order to prevent immediate and irreparable harm pending the final resolution of this matter.

Dated: June 7, 2024

Respectfully submitted,

By:    /s/ *Ashleigh A. Stochel*

    Ashleigh A. Stochel
    Victoria Mpistolarides

    Kilpatrick Townsend & Stockton LLP
    175 W. Jackson Blvd., Suite 950
    Chicago, IL 60604
    Telephone: (312) 704-8283
    Fax: (312) 277-5195
    astochel@ktslaw.com
    vmpistolarides@ktslaw.com

    Cole Ramey (*pro hac vice* to be filed)
    Texas State Bar No. 16494980
    Zoe Stendara (*pro hac vice* to be filed)
    Texas State Bar No. 24122986
    Kilpatrick Townsend & Stockton LLP
    2001 Ross Ave., Suite 4400
    Dallas, Texas 75201
    Telephone: (214) 922-7100
    Fax: (214) 279-5113
    cramey@ktslaw.com
    zstendara@ktslaw.com

    **ATTORNEYS FOR PLAINTIFF 7-ELEVEN, INC.**